UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| KAILEY KUNTZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1: 18-cv-272 |
| | ) | |
| DeKALB COUNTY SHERIFF'S | ) | |
| DEPARTMENT; | ) | |
| WATERLOO, INDIANA; | ) | |
| STEPHEN BRADY, in his individual | ) | |
| capacity; | ) | |
| JOSHUA HEFFELFINGER, in his | ) | JURY TRIAL DEMANDED |
| individual capacity; | ) | |
| THOMAS OLINSKE, in his | ) | |
| individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**Complaint for Damages**

**Introductory statement**

1.      Kailey Kuntz, a person with a number of disabilities, uses a service animal to assist her in coping with the disabilities. While eating in a restaurant with her service animal and her family she was challenged by staff to present "legal papers" to justify her use of the animal, in clear violation of the Americans with Disabilities Act. When she and her family did not immediately respond to this unlawful demand, officers of the DeKalb County Sheriff's office and Waterloo Town Marshall's office were summoned and repeated the demand that papers be produced and required that Ms. Kuntz and her family leave the restaurant. Ms. Kuntz began to suffer a panic attack, for which her dog was trained to assist. Ms. Kuntz asked one of the officers to allow her to lay down so the

[1]

dog could assist her. The officer refused to let her lay down. The actions of the defendants violate both the Americans with Disabilities Act, 42 U.S.C. § 12132, and the Fourth Amendment to the United States Constitution. Appropriate damages should be awarded.

**Jurisdiction, venue and cause of action**

2. This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

4. Declaratory relief is authorized by 28 U.S.C. § 2201 and 28 U.S.C. § 2202 and by Rule 57 of the Federal Rules of Civil Procedure.

5. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States and is also brought pursuant to the Americans with Disabilities Act, 42 U.S.A. § 12133.

**Parties**

6. Kailey Kuntz is an adult resident of DeKalb County, Indiana.

7. The DeKalb County Sheriff's Department supplies law enforcement services to DeKalb County, Indiana.

8. The Town of Waterloo is a town located in DeKalb County, Indiana, and employs the Waterloo Town Marshal and his officers.

9. Stephen Brady is an officer employed by the Waterloo Town Marshal and holds the rank of sergeant.

10. Joshua Heffelfinger is an officer employed by the Waterloo Town Marshal.

11. Thomas Olinske is a deputy with the DeKalb County Sheriff's Department.

**Facts**

12. Kailey Kuntz suffers from a number of disabilities that substantially limit one or more major life activities.

13. Specifically, she suffers from severe panic disorder, hypoglycemia (low-blood sugar), multiple sclerosis, and seizures.

14. Kailey Kuntz is at times unable to care for herself and is unable to work. She has difficulties in thinking and concentrating and, at times, has difficulty in performing manual tasks.

15. To assist her, she utilizes a trained service dog, a three-year old dog named Reese.

16. Because of her hypoglycemia, Kailey Kuntz's blood sugar may quickly drop to dangerously low levels. Reese is trained to sense and to alert when this happens so that Kailey or those with her may take measures to relieve or ameliorate the problem.

17. Without such a prior alert, Ms. Kuntz will suffer drops in her blood sugar that will cause her to lose consciousness.

18. Reese is also trained to alert before Kailey Kuntz suffers a seizure so that steps may be taken to assure her safety, such as getting in proper position and making sure her breathing is not obstructed.

19. Without such prior warning Ms. Kuntz risks serious injury.

20. Reese is also trained to sense when Ms. Kuntz is having a panic attack. When this occurs Reese will, if necessary, nudge Ms. Kuntz until she lays down and then the dog is trained to lay on top of Ms. Kuntz and stroke her so that she calms down.

21.     Without this, the panic attack will go unchecked and Ms. Kuntz may engage in self-injurious behavior and will otherwise be subject to injury and mental distress.

22.     Reese wears a vest indicating that she is a service animal and a medical alert dog.

23.     Ms. Kuntz has had Reese since the animal was 8 weeks old. At that point the dog's training began and continued for approximately a year. She is still learning new ways to aid Ms. Kuntz.

24.     Reese is always with Ms. Kuntz, both when Ms. Kuntz goes out in public and when she is at home.

25.     On July 20, 2018, Ms. Kuntz went out to dinner with her mother and step-father at Kathy's Kountry Kitchen in Waterloo, Indiana.

26.     Reese accompanied Ms. Kuntz.

27.     Ms. Kuntz and Reese had frequently eaten at Kathy's Kountry Kitchen without incident.

28.     However, on this evening a waitress, upon seeing Reese, inquired as to Ms. Kuntz's disabilities and demanded to see registration paperwork confirming that Reese was an actual service animal.

29.     When Ms. Kuntz's mother explained that those questions were not permissible under federal law the waitress yelled across the dining room to the manager on duty that Ms. Kuntz did not have paperwork and further yelled that Ms. Kuntz had the dog for anxiety.

30.     The manager then came over to the table and demanded that Ms. Kuntz produce paperwork that Reese was actually a service dog.

31. Ms. Kuntz's mother again stated that it was not legal to ask these questions.

32. Shortly after this Sgt. Brady, Town Marshal Officer Heffelfinger and DeKalb County Deputy Olinske arrived on the scene.

33. The three officers approached the table where Ms. Kuntz and Reese as well as Ms. Kuntz's mother and step-father were sitting.

34. Sgt. Brady addressed Ms. Kuntz and her family and said that they had been called because the dog did not have the proper paperwork and that the family needed to leave the restaurant. He repeated the demand that Ms. Kuntz produce paperwork to demonstrate her need for the dog and that the dog was a trained service animal. Sgt. Brady asked Ms. Kuntz what her disability was.

35. Ms. Kuntz and her stepfather went outside with Deputy Olinske and Ms. Kuntz's mother remained inside the restaurant as Sgt. Brady talked to the restaurant manager. Officer Heffelfinger remained inside, but came outside after a few minutes and joined Deputy Olinske.

36. While outside Deputy Olinske continued to the demand that Ms. Kuntz produce paperwork to demonstrate that Reese was a service animal and that Ms. Kuntz had a need for the animal. He also asked Ms. Kuntz the nature of her disability.

37. When Ms. Kuntz and her stepfather were outside, Deputy Olinske demanded that they produce their identification. Ms. Kuntz informed the officer that her mother, who was still inside the restaurant, had her identification. However, her stepfather gave his identification and the officer called it in.

38. Ms. Kuntz sat on a cement ledge near the entrance to the building housing the restaurant, near the parking lot.

39. Ms. Kuntz was not free to leave and a reasonable person would not have believed that she was free to leave given the circumstances. Among other things, officers stood between her and the family car and officers indicated that this was an "investigation."

40. While all this was going on, Ms. Kuntz began to have a panic attack.

41. Reese, consistent with her training, sensed that Ms. Kuntz was beginning to have a panic attack and the dog attempted to nudge her stomach so Ms. Kuntz could get into a prone position to allow the dog to get on her and assist her in avoiding an escalation of the panic attack.

42. The closest place where Ms. Kuntz could get into the position so Reese could assist her was in the backseat of her mother and stepfather's car that was parked nearby in the parking lot of the restaurant.

43. Ms. Kuntz requested permission to move to the car from Deputy Olinske, who refused the request. Ms. Kuntz was in tears by this point.

44. This caused Ms. Kuntz to have a full-blown debilitating panic attack in the parking lot of the restaurant. Ms. Kuntz went from crying to "shutting down," causing her to be extremely tense and withdrawn while experiencing psychological turmoil.

45. The physical and emotional harm that Ms. Kuntz suffered because of this panic attack was magnified because Ms. Kuntz was forced to have it in front of persons entering and leaving the restaurant.

46. By this point, Ms. Kuntz's mother had left the restaurant and joined Ms. Kuntz and her stepfather in the parking lot where Deputy Olinske and Officer Heffelfinger held them until Sgt. Brady returned.

47. During the period of time until Sgt. Brady returned, Ms. Kuntz and her family were not allowed to leave.

48. When Sgt. Brady returned to the parking lot he informed Ms. Kuntz and her family that they had to leave the restaurant because the restaurant had the right to deny them service.

49. Ms. Kuntz's mother protested that under the Americans with Disabilities Act it is not lawful to demand documentation concerning a service animal.

50. Sgt. Brady responded that the police authorities cannot enforce the Americans with Disabilities Act.

51. At no point was there cause to detain plaintiff.

52. Ms. Kuntz has been profoundly disturbed by this incident.

53. Ms. Kuntz has been damaged by the actions of the defendants.

54. Ms. Kuntz is a qualified individual with a disability as set out in 42 U.S.C. § 12102 and 42 U.S.C. § 12131.

55. At all times defendants have acted under color of state law.

**Jury trial requested**

56. Plaintiff requests a jury trial on all claims so triable.

**Legal claims**

[7]

57. The response to the incident described above by the defendant law enforcement officers of the DeKalb County Sheriff and the Town of Waterloo represents exclusion of Ms. Kuntz, because of her disabilities, from participation in, or denial of the benefits of the services, program or activities of the public entities or is otherwise discrimination by the public entities in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, for which the public entities are liable.

58. The failure of Deputy Olinske to allow Ms. Kuntz to lay in a position where she could get assistance from her service animal represents a failure to accommodate her disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12132, for which the Town of Waterloo is liable.

59. The actions of Sgt. Brady, Deputy Olinske, and Officer Heffelfinger in seizing Ms. Kuntz, as described above, violate the Fourth Amendment as the seizure was unreasonable and without cause and the three individual defendants are therefore liable for her damages.

**Request for relief**

WHEREFORE, Kailey Kuntz requests that this Court:

1. Accept jurisdiction of this case and set it for hearing at the earliest opportunity.

2. Declare that the actions and inactions of the defendants in this matter were unlawful for the reasons noted above.

3. Award plaintiff her damages following a jury trial in this case.

4. Award plaintiff her costs and attorneys' fees pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 12133.

5. Award all other proper relief.

*s/ Kenneth J. Falk*
Kenneth J. Falk
No. 6777-49

*s/ Jan P. Mensz*
Jan P. Mensz
No. 33798-49
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059
fax: 317/635-4105
kfalk@aclu-in.org
jmensz@aclu-in.org

Attorneys for Plaintiff
